In re:  S-Tek 1, LLC,                                    No. 20-12241-j11

  Debtor.

## MEMORANDUM OPINION REGARDING MOTION
## FOR JOINT REPRESENTATION

Before the Court is debtor S-Tek 1, LLC's ("Debtor") *Motion to Approve Continued Employment of Attorney as Counsel for Debtor Simultaneous to Attorney's Representation of Third-Party Defendants in Adversary Proceeding* (the "Motion") filed August 10, 2021. Doc. 213.[1] The United States Trustee (the "UST") filed an objection to the Motion (Doc. 218). Surv-Tek, Inc. ("Surv-Tek"), STIF, LLC ("STIF"), Russ Hugg, and Robbie Hugg (collectively, the "Surv-Tek Parties") joined in the objection. Doc. 219. On September 27, 2021, the Court held a final hearing on the Motion and objections. For the reasons explained below, the Court will grant Debtor's Motion provided that four conditions are met.

### FINDINGS OF FACT[2,3]

Debtor is a limited liability company providing commercial and residential land surveying and platting services in New Mexico. On December 2, 2020 (the "Petition Date"), Debtor filed its voluntary chapter 11 petition, together with an application to employ Attorney as its counsel in the

---

[1] References to "Doc. __" are to the docket in the bankruptcy case, Case No. 20-12241. References to "AP Doc. __" are to the docket in the Adversary Proceeding, Adv. Proc. No. 20-01074.

[2] The Court takes judicial notice of the docket and claims register, and the documents therein, in this bankruptcy case and the Adversary Proceeding. See Fed. R. Evid. 201(b)(2) and (c); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its own docket), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[T]he bankruptcy court appropriately took judicial notice of its own docket . . .").

[3] These findings of fact are based on background facts taken in evidence at other hearings and are not in dispute.

bankruptcy case and all related matters. Doc. 5. The Court granted Debtor's application to employ Attorney on February 1, 2021. *See* Doc. 84.

Prior to the Petition Date, in July 2019, Debtor filed an action against the Surv-Tek Parties,[4] related to Debtor's purchase of Surv-Tek's surveying business, entitled *S-Tek 1, LLC v. Surv-Tek, Inc.*, Case No. D-202-CV-2019-05359, in the Second Judicial District Court of New Mexico (the "State Court Action"). In response, Surv-Tek and STIF filed counterclaims against Debtor and a third-party complaint against Randy Asselin, Christopher Castillo, and Kymberlee Castillo (collectively, the "Individuals"), as well as First Corporate Solutions, Inc.[5] and John Does 1-50. On December 10, 2020, following Debtor's bankruptcy filing, the State Court Action was removed to this Court (Doc. 27) thereby commencing Adversary Proceeding No. 20-01074-j (the "Adversary Proceeding").

Debtor brought claims against the Surv-Tek Parties for, among other things, fraud and negligent misrepresentation in the marketing and sale of Surv-Tek's business. *See* AP Doc. 13-2. Debtor has also asserted claims for breach of contract and breach of good faith and fair dealing, including with respect to promises made to assist Debtor with the transition of the business. *Id.* Essentially, Debtor blames the Surv-Tek Parties for its business struggles.

Meanwhile, as a result of Debtor's business struggles, it fell behind on payments owed to Surv-Tek and STIF. They filed counterclaims, including breach of a promissory note and security agreement and breach of lease. *See* AP Doc. 31. Additionally, one or more of the Surv-Tek Parties assert claims against the Individuals based on personal guarantees of Debtor's

---

[4] There was another defendant, one Dennis Smigiel, who was the broker in the marketing and sale of the business, but Debtor entered into a settlement agreement with him and released all claims against him. *See* Doc. 187.

[5] The Surv-Tek Parties voluntarily dismissed First Corporate Solutions, Inc., as a third-party defendant on June 26, 2020. AP Doc. 13-53.

debt to Surv-Tek and claims against one or more of the Individuals and Debtor for conversion and fraud. *See* AP Docs. 31 & 31-1. The conversion claim is based on factual allegations that Debtor and the Individuals removed vehicles and other collateral pledged by Debtor to Surv-Tek from the leased business premises in violation of the security agreement between Surv-Tek and Debtor. AP Doc. 31-1, ¶¶ 32-36. The fraud claim alleges that Debtor and the Individuals misrepresented that they would fulfill their contractual obligations to Surv-Tek and STIF when they never had any intention of doing so, and that evidence of such misrepresentation includes the removal of collateral from the leased business premises in violation of the security agreement. *See* AP Doc. 31, ¶ 244.

In the bankruptcy case, Debtor seeks to bifurcate Surv-Tek's claim under § 506(a) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.,[6] into secured and unsecured claims to reduce the amount Debtor is required to pay Surv-Tek under a chapter 11 plan. *See* AP Doc. 29; Doc. 248.[7]

The deadline for filing proofs of claim or interest, known as the "bar date," in the bankruptcy case was February 1, 2021. *See* Docs. 36 & 37. The Individuals did not file any proofs of claim before or after the bar date. *See* Claims Register in Case No. 20-12241.

## DISCUSSION

On August 10, 2021, Debtor filed the Motion, seeking approval for Attorney to jointly represent: (1) Debtor in the main bankruptcy case and all related matters, including the Adversary Proceeding and (2) the Individuals, without charge, in the Adversary Proceeding. The Court heard oral argument on the Motion and objections thereto on September 27, 2021 and took

---

[6] All future statutory references are to title 11 of the United States Code, unless otherwise noted.

[7] Debtor filed its request for bifurcation of Surv-Tek's claim in Count XV of the *Supplement to Amended Complaint*. AP Doc. 29, ¶ 201. On October 14, 2021, the Court ordered the Debtor to move this request to the bankruptcy case by filing a motion to value Surv-Tek's collateral, so that all creditors and parties in interest could have an opportunity to respond. Doc. 248.

the matter under advisement.

The UST and/or the Surv-Tek Parties argue that Attorney should not be permitted to represent the Individuals in the Adversary Proceeding while at the same time continuing to represent the Debtor because: (1) there are inherent conflicts of interest in the joint representation, (2) Attorney would represent the Individuals without charge, which would create insurmountable problems in tracking time for services that should not be charged to Debtor, and (3) if Attorney were required to withdraw because a potential conflict of interest ripened into an actual conflict, Attorney would be required to withdraw from representing all clients, which poses an unacceptable risk to Debtor.

The alleged inherent conflicts of interest consist of: (a) if Debtor asserts as a defense to intentional tort claims that actions taken by the Individuals were *ultra vires*, Debtor's interests would be adverse to the Individuals, (b) the Individuals might have a claim for indemnification from Debtor based on their personal guarantees of debt owed by Debtor, making Debtor's interests adverse to the Individuals,[8] (c) Debtor by seeking to bifurcate the claim of Surv-Tek is working against the interests of the Individuals because the less Debtor pays Surv-Tek, the more the Individuals as guarantors are obligated to pay, and (d) the equity interests of Mr. Castillo and Mr. Asselin are inherently adverse to the interests of Debtor in the main bankruptcy case.

### *Effect of Actual and Potential Conflicts of Interest on Joint Representation*

Section 327(a) provides that the trustee, or debtor-in-possession, with the court's approval, may employ professional persons that "do not hold or represent an interest adverse to the estate" and that are "disinterested." The Court authorized Debtor's employment of Attorney at the outset of the bankruptcy case. The Court now considers whether Attorney would still

---

[8] At points in the Motion and the record, this was referred to as a subrogation claim. However, it is more properly an indemnification claim.

satisfy § 327 with respect to Debtor if it also were to represent the Individuals in the Adversary Proceeding.

Section 327(a) precludes joint representation of the debtor and another party if such joint representation would create an actual conflict of interest. Pursuant to § 327(c), however, in a chapter 11 case, "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c).

Bankruptcy courts can approve joint representation even where parties are adverse to one another outside of the scope of the joint representation. *In re Art Van Furniture, LLC*, 617 B.R. 509, 519-20 (Bankr. D. Del. 2020) (granting retention application of law firm that simultaneously represented creditor on unrelated matter); *In re Pappas*, 216 B.R. 87, 92 (Bankr. D. Conn. 1997) (permitting counsel to jointly represent creditor and the trustee, as special counsel); *In re Stone Res., Inc.*, No. 11-11124, 2017 Bankr. LEXIS 1241, at *35-36 (Bankr. E.D. Pa. May 4, 2017) (refusing to disqualify ch. 11 debtor's counsel on the basis that he jointly represented debtor & debtor's principal in separate lawsuit to enforce non-compete provisions of franchise agreement); *In re Bolton-Emerson, Inc.*, 200 B.R. 725, 731-32 (D. Mass. 1996) (affirming bankruptcy court finding that there was no conflict of interest in counsel jointly representing debtor and two of its officers in state court litigation); *In re Destin Res. LLC*, No. 17-51570, 2020 WL 6938861, at *7-8 (Bankr. W.D. La. Nov. 6, 2020) (permitting employment of attorney as special counsel, when attorney jointly represented the debtor and a creditor, because the interests of the debtor and creditor were aligned for the purpose of the employment).

If there is a potential conflict of interest that could ripen into an actual conflict, it is within the court's sound discretion to permit or deny employment or disqualify counsel from employment by a debtor.[9] "Disqualification based on a potential conflict of interest should take into account the nature and extent of the potential conflict, and the likelihood that the potential conflict might become an actual one." *In re Platinum Oil Prop., LLC*, No. 09-10832, 2009 WL 5201851, at *10 (Bankr. D.N.M. Dec. 23, 2009) (citing *In re Dick Cepek, Inc.*, 339 B.R. 730, 740 (9th Cir. BAP 2006)). "Potential conflicts range from mere possibilities to reasonably anticipated probabilities. If it is determined that the latter end of that continuum is implicated, a court need not wait until the inevitable result actually occurs to disqualify counsel." *In re AroChem Corp.*, 181 B.R. 693, 700 (Bankr. D. Conn. 1995), *subsequently aff'd*, 176 F.3d 610 (2d Cir. 1999).

The Court will examine the alleged conflicts of interest and other grounds asserted by the UST and the Surv-Tek Parties as the basis for their objections to the Motion.

### *Possible Ultra Vires Defense to Conversion and Fraud Claims*

If Debtor were to raise a defense to the conversion and fraud claims brought against it by pointing the finger at the Individuals by asserting they acted outside the scope of their authority, the joint representation would pose an actual conflict of interest. However, this potential conflict of interest does not warrant denial of the request for joint representation. While the Court cannot

---

[9] *In re Platinum Oil Prop., LLC*, No. 09-10832, 2009 WL 5201851, at *10 (Bankr. D.N.M. Dec. 23, 2009) (explaining that "the Court has discretion to disqualify counsel that has a potential conflict of interest") (internal citations omitted); *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 476 (3d Cir. 1998) (holding that the court "may within its discretion . . . disqualify an attorney who has a potential conflict of interest"); *In re Gilbertson's Restaurants LLC*, No. 04-00384, 2004 WL 1724878, at *3 (Bankr. N.D. Iowa May 3, 2004) ("Disqualification due to a potential conflict of interest . . . is within the bankruptcy court's discretion.").

rule on this issue definitively at this time, it appears very unlikely that Debtor has a viable *ultra vires* defense.

First, to successfully assert a defense that Debtor is not liable for the acts of the Individuals, it is not enough merely to establish that removal of Surv-Tek's collateral was unauthorized or the alleged fraud was *ultra vires*. Under tort law, a company has vicarious liability for a tort committed by one of its principals if the activity was in the scope of the principal's employment.[10] The fact that a principal's act may be unauthorized or even criminal does not automatically prevent it from falling within the scope of employment, especially if the principal is motivated to some extent by business purposes. *See Nichols v. United States,* 796 F.2d 361, 365 (10th Cir. 1986) ("It is not enough for the employer to establish that the employee's conduct was unauthorized. . . . To escape liability an employer must show that when the wrongful act was committed, the employee had abandoned his employment and was acting for a purpose of his own which was not incident to his employment.") (internal citations omitted); *In re 604 Columbus Ave. Realty Trust,* 119 B.R. 350, 372 (Bankr. D. Mass. 1990), *aff'd in part, rev'd in part,* 968 F.2d 1332 (1st Cir. 1992) ("The fact that an agent's act may be criminal does not by itself prevent it from falling within the scope of employment, particularly if the agent is actuated by the principal's business purposes to any appreciable extent.") (internal

---

[10] *See Nichols v. United States,* 796 F.2d 361, 365 (10th Cir. 1986) (holding that there was a material issue of fact as to whether job corps enrollee was acting within the scope of his employment when he bit plaintiff's finger); *Zurowski v. Parker*, No. 64907, 1994 WL 173658, at *10 (Ohio Ct. App. May 5, 1994) (holding that the vice president of a closely-held business was within the scope of his employment driving a golf cart at time plaintiff was thrown from the cart, and therefore the company was vicariously liable for the tort); *Ermert v. Hartford Ins. Co.,* 559 So. 2d 467, 469 (La. 1990) (holding that the majority stockholder, president, and CEO of a closely-held corporation was using a hunting lodge for business purposes and therefore within the scope of his employment, so company was liable for tort of another hunter being shot); *Doody v. John Sexton & Co*., 411 F.2d 1119, 1122 (1st Cir. 1969) (holding that a merchandising company could be liable to plaintiff for promises by two company officers of lifetime employment if plaintiff moved to California, where plaintiff moved and found substantially different conditions than promised).

citations omitted); *Doody v. John Sexton & Co.*, 411 F.2d 1119, 1122 (1st Cir. 1969) ("[I]t is common experience for a principal to be held accountable in tort for unauthorized acts of an agent not too far removed from the scope of his authority, even though, strictly, they were not authorized.").

Here, the Individuals allegedly removed collateral so Surv-Tek could not deprive Debtor of the use of the collateral, and allegedly misrepresented an intent to comply with the agreement under which Debtor purchased Surv-Tek's business. Those actions on their face appear to be directly related to Debtor's business purposes, which would make the *ultra vires* defense unavailable.

Second, it is difficult to comprehend how an action could be unauthorized if it is taken by all members of an LLC, including the managing member. The members of an LLC are the ones who would authorize a particular action. In the case of an LLC, to the extent an action may have been unauthorized if taken by one member, where the action is taken by all members, that logically grants approval by the LLC for the action. Here, the Surv-Tek Parties have alleged that both Mr. Asselin and Mr. Castillo removed the collateral.

Again, while the Court is not able to rule definitively at this point that a defense based on the Individuals acting outside the scope of their authority or employment would fail, it appears to the Court that the prospect that Debtor will assert this defense is remote. Nevertheless, if Debtor wishes to proceed with the joint representation, to ensure no actual conflict of interest arises from assertion of the defense, Debtor must stipulate that it will not assert the defense.

### *Possible Indemnification Claims by the Individuals Against Debtor*

The Court has determined there is a potential conflict of interest based on the possibility that the Individuals could assert an indemnification claim against Debtor. The Individuals have

not filed a proof of claim in the bankruptcy case. The claims bar date has passed. If the Individuals nevertheless file proofs of claim for indemnification, Debtor would need to decide whether to object because the claims were filed late or object to the substance of the claims, or both. If the Individuals assert an indemnification claim against Debtor, it would pose a conflict for Attorney to represent both Debtor and the Individuals in the Adversary Proceeding as the indemnification claim would be related to the subject matter of the joint representation.

The Individuals may have an indemnification claim against Debtor based on a claim for reimbursement by Debtor if the Individuals pay Surv-Tek due to their liability under a guarantee of Debtor's obligation to pay Surv-Tek for Debtor's purchase of Surv-Tek's business.[11] It appears that any indemnification claims the Individuals may have relating to their personal guarantees are pre-petition claims, whether arising from agreement or common law. If there is an indemnification claim based on a pre-petition agreement, for bankruptcy purposes the indemnification claim arises pre-petition, even if it the claim is contingent and unliquidated. *See In re Hemingway Transp.*, 954 F.2d 1, 9 (1st Cir. 1992) (holding that indemnification claim from agreement was pre-petition claim even though it was "contingent, unliquidated and unmatured at the time of the filing"); *In re Banco Latino Int'l*, No. 94-10202, 2003 Bankr. LEXIS 2139, at *19 (Bankr. S.D. Fla. Jan. 23, 2003) (holding that indemnification claims based on company by-laws were pre-petition claims, with the parties' agreement); *In re Mid-Am. Waste Sys., Inc.*, 228 B.R.

---

[11] *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 22 (1996) ("[I]t is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor . . . performs the secondary obligation . . ."); *In re AOG Entm't, Inc*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) ("[A] guarantor has a right of indemnity against the principal obligor."); *In re New 118th LLC*, 396 B.R. 885, 891 (Bankr. S.D.N.Y. 2008) ("[I]f the creditor recovers from the guarantor . . . the guarantor will succeed to a corresponding claim based on principles of subrogation, common law indemnification or reimbursement.); *In re J.T. Moran Fin. Corp.*, 119 B.R. 447, 451–52 (Bankr. S.D.N.Y. 1990) ("Even though not expressly provided for in the guaranty, a promise to indemnify the surety is implied by law when a party agrees to become a guarantor at the behest of the principal obligor.") (citing *Pro–Specialties, Inc. v. Thomas Funding Corp.,* 812 F.2d 797, 800 (2d Cir. 1987)).

816 (Bankr. D. Del. 1999) (denying administrative expense priority to indemnification claim even though litigation was commenced post-petition because indemnification provisions were in effect pre-petition).

Additionally, the Tenth Circuit Court of Appeals has adopted the "conduct theory" for when claims arise for purposes of bankruptcy, which determines the date of a claim by the date of the conduct giving rise to the claim. *In re Parker,* 313 F.3d 1267, 1269-70 (10th Cir. 2002) (holding that malpractice claim arose for purposes of bankruptcy on the date the malpractice occurred). The Tenth Circuit compared the conduct theory with the "accrual theory," which determines the date of a claim pursuant to the state law under which liability for the claim arose, adopted by the Third Circuit Court of Appeals in *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 337 (3d Cir. 1984), *overruled by Jeld-Wen, Inc. v. Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010). In *Frenville*, the Third Circuit held that an accounting firm's indemnification claim was post-petition because the firm did not have a "right to payment" from debtor until the plaintiff filed its lawsuit against the accounting firm, which was post-petition—even though the conduct upon which the liability was predicated (negligent preparation of debtor's financial statements) occurred pre-petition. *Frenville*, 744 F.2d at 337. Since the Tenth Circuit rejected *Frenville* and adopted the "conduct theory," the test is whether the conduct that gave rise to the claims occurred pre-petition.

Here, the claims against the Individuals that could give rise to indemnification claims are based on guarantees made pre-petition. Therefore, even if the indemnification claims accrued under common law post-petition for statute of limitations purposes, it appears the Individuals' indemnification claims would be pre-petition claims in the bankruptcy case.

Since the possible indemnification claims would be pre-petition claims, and the claims bar date has already run, it appears the Individuals do not wish to pursue these claims. However, to avoid the possibility that a potential conflict of interest would ripen into an actual conflict, such as if the Individuals file late proofs of claim or seek an extension of the claims bar date while Attorney jointly is representing them and Debtor, the Individuals must waive any indemnification claim they may have against Debtor in order for the Court to approve the joint representation.

### *Bifurcation*

The objectors raised the issue of Debtor's pursuit of bifurcation of Surv-Tek's claim pursuant to § 506(a) as a conflict of interest preventing Attorney from representing both Debtor and the Individuals in the Adversary Proceeding. The objectors argue that Debtor's interest in bifurcation is opposed to the interests of the Individuals, because the reduction of Surv-Tek's allowed secured claim may result in greater liability for the Individuals. However, the issue of bifurcation is a red herring for conflict of interest purposes. While there is theoretically adversity on the basis that reduction of Surv-Tek's allowed secured claim could result in greater liability for the Individuals, in reality bifurcation, combined with Debtor's effort in the Adversary Proceeding to reduce or eliminate Surv-Tek's net claims against Debtor, is central to Debtor's chapter 11 reorganization strategy. That strategy will not be compromised by Attorney's representation of Debtor and the Individuals in the Adversary Proceeding. Therefore, as a practical matter, Debtor's interests and the Individuals' interests are aligned on the issue.

Additionally, as noted above, even if there were adversity on this issue, courts can approve representation where parties are adverse to one another outside of the scope of

representation. *See* cases cited *supra* p. 5. Here Debtor's interests and the Individuals' interests are aligned for purposes of the Adversary Proceeding.

### Treatment of Equity Interests Under the Plan

The objectors additionally argue that there is a conflict of interest because Debtor could seek to impair Mr. Asselin's and Mr. Castillo's equity interests through its chapter 11 plan, which could render Mr. Asselin and Mr. Castillo adverse to Debtor in the bankruptcy case. However, the current proposed chapter 11 plan provides that "Debtor's equity interest holders shall retain their equity interest under the Plan," so they would not be impaired. Doc. 96, ¶ 7.01. The objectors did not suggest any reason why Debtor might wish to impair such equity interests, and further, it is not apparent to the Court why Debtor would pursue that course of action. Debtor is proceeding under subchapter V of chapter 11, and the absolute priority rule in § 1129(b)(2)(B), which often leads to the need for equity interests to be impaired in order to confirm a chapter 11 plan, does not apply in subchapter V cases. Thus, although a reason to modify Debtor's equity interests may exist, the Court sees the prospect as unlikely. In the event that Debtor files a plan modification that impairs equity, the Court will consider at that time whether it creates a conflict of interest.

### Timekeeping

The objectors raised another objection on the basis of timekeeping. The Court agrees that parsing time spent in court or engaging in discovery to allocate time spent on work for Debtor versus work for the Individuals would be a difficult if not impossible exercise. Therefore, if Debtor and the Individuals wish to pursue the joint representation, Attorney and Debtor must agree to a general rule for allocation of counsel's time charged to Debtor in the Adversary Proceeding and rendered without charge to the Individuals in the Adversary Proceeding.

Exercising reasonable discretion, the Court has determined that for it to approve the joint representation, Debtor and Attorney must agree that time spent by Attorney for services rendered in the Adversary Proceeding shall be allocated 70% to Debtor and 30% to the Individuals for services rendered after the joint representation begins. Given the nature of the issues in the Adversary Proceeding, this allocation benefits Debtor, which is appropriate to protect the estate.

### *Withdrawal*

As a final consideration, if an actual conflict of interest arises, which the Court regards as unlikely due to the conditions the Court has imposed for Attorney to undertake the joint representation, Attorney must promptly notify the Court and seek withdrawal from its representation of the Individuals. As a further condition to the Court approving the joint representation, the Individuals must consent to Attorney's withdrawal as their counsel in the Adversary Proceeding, and to Attorney's continued representation of Debtor, if an actual conflict of interest arises. The Court reserves the right to order withdrawal of counsel from its representation of the Debtor as well depending on the nature of the conflict but regards that possibility as sufficiently remote that it does not warrant denial of the request for joint representation.

## CONCLUSION

Based on the foregoing, the Court will grant the Motion and approve joint representation of Debtor and the Individuals in the Adversary Proceeding, provided that, before the joint representation begins: (1) Debtor stipulates that it will not raise a defense in the Adversary Proceeding based on the actions of the Individuals being *ultra vires* or outside of their authority or the scope of their employment, (2) Debtor and Attorney agree to the 70%/30% allocation of Attorney's time described above, (3) the Individuals file of record a waiver of any

indemnification claims against Debtor based on anything that had occurred or occurs prior to the closing of this bankruptcy case or conversion or dismissal of the case, and (4) the Individuals file of record a consent to withdrawal of Attorney as their counsel in the Adversary Proceeding and Attorney's continued representation of Debtor, if an actual conflict of interest emerges preventing Attorney from jointly representing Debtor and the Individuals. If any of these conditions is not met, Attorney may not jointly represent Debtor and the Individuals in the Adversary Proceeding.

The Court will enter a separate order consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: October 19, 2021

COPY TO:

Nephi Hardman
Attorney for Debtor
Nephi D. Hardman Attorney at Law, LLC
9400 Holly Ave NE Bldg 4
Albuquerque, NM 87122

Chris M. Gatton
Attorney for Surv-Tek, Inc.
Giddens & Gatton Law, P.C.
10400 Academy Rd, NE, Ste 350
Albuquerque, NM 87111

Patrick Malloy, III
Subchapter V Trustee
Patrick J. Malloy, III, Trustee
401 S. Boston Ave, Ste 500
Tulsa, OK 74103

Jaime A. Pena
Office of the U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103-0608