UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: S-Tek 1, LLC, a
New Mexico limited liability company,

No. 20-12241-j11

Debtor.

## MEMORANDUM OPINION AND ORDER DETERMINING THAT A CREDITOR MAKING THE ELECTION UNDER 11 U.S.C. § 1111(b) IS ENTITLED TO VOTE ITS IMPAIRED SECURED CLAIM TO ACCEPT OR REJECT A CHAPTER 11 PLAN

This matter came before the Court at a status conference held November 10, 2021. The parties and the Court discussed, among other things, the following provision in the Modification to Debtor's Plan of Reorganization October 26, 2021 (Doc. 257):

> 7.03 The Debtor intends to file another pre-confirmation modification to the Plan if any creditor makes the election available under 11 U.S.C. § 1111(b) (the § 1111(b) Election"). Any creditor or claimant who makes the § 1111(b) Election is not entitled to vote on the Plan. *See Wade v. Bradford*, 39 F.3d 1126, 1129 (10th Cir. 1994) ("Alternatively, the creditor may elect to have its claim treated as fully secured. 11 U.S.C. § 1111(b)(2). This means that the creditor relinquishes his right to vote on the plan . . . .").

The Scheduling Order resulting from the Status Conference (Doc. 265) fixed a deadline of November 19, 2021 for the Debtor and Surv-Tek, Inc. ("Surv-Tek") to file simultaneous briefs on the issue of whether a creditor making the election under 11 U.S.C. § 1111(b)[1] (the "1111(b) election") is entitled to vote to accept or reject Debtor's chapter 11 plan.[2]

Debtor's chapter 11 case is pending under subchapter V. Debtor asserts that under *Wade v. Bradford*, 39 F.3d 1126 (10th Cir. 1994), a creditor making the § 1111(b) election to treat its entire claim as secured forfeits its right to vote on a chapter 11 plan. Surv-Tek disagrees,

---

[1] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[2] Debtor and Surv-Tek timely filed simultaneous briefs. *See* Docs. 275 and 277.

countering that a creditor making the § 1111(b) election relinquishes only its right to vote any unsecured deficiency claim because its entire claim is treated as a secured claim. Having considered the parties' briefs and the relevant caselaw, the Court concludes that a creditor making the § 1111(b) election is entitled to vote its impaired secured claim to accept or reject a debtor's chapter 11 plan but relinquishes its right to vote as an unsecured creditor.

DISCUSSION

A.  **Wade v. Bradford is Not Controlling Authority on the Issue Before the Court**

In *Wade v. Bradford*, 39 F.3d 1126 (10th Cir. 1994), the Tenth Circuit stated:

> [T]he creditor may elect to have his claim treated as fully secured. 11 U.S.C. § 1111(b)(2). This means that the creditor relinquishes his right to vote on the plan and to share in the distribution to unsecured creditors, but that the creditor must be paid the full amount of his claim over time, so long as the present value of such payments equals the value of the collateral.

*Wade*, 39 F.3d at 1129 (citations omitted). Debtor asserts that *Wade* is controlling authority on the issue of whether Serv-Tek will necessarily relinquish its right to vote on the plan if it makes the § 1111(b) election. The Court disagrees.

The Tenth Circuit's observation in *Wade* regarding the effect of the § 1111(b) election on the right to vote is dicta that this Court is not required to follow. *See In re Lerner*, 611 B.R. 409, 415 (Bankr. D. Kan. 2019) (dicta is the exception to the rule of stare decisis under which the bankruptcy court would otherwise be bound by Tenth Circuit decisions). "[D]icta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case at hand.'" *In re Tuttle*, 291 F.3d 1238, 1242 (10th Cir. 2002) (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting *Black's Law Dictionary* 454 (6th Ed. 1990)).

The issue before the Tenth Circuit in *Wade v. Bradford* was whether a chapter 11 debtor could bifurcate an undersecured claim into secured and unsecured claims and thereby strip a creditor's undersecured mortgage down to the value of its collateral. 39 F.3d at 1127. The creditor argued that the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), which determined that a chapter 7 debtor could not use § 506(d) to strip down a lien on real property to the value of the collateral, likewise prohibits lien stripping in chapter 11 cases. *Id.* at 1128. The Tenth Circuit disagreed, reasoning that if an undersecured claim could not be bifurcated into secured and unsecured claims in a chapter 11 case, the § 1111(b) election, which allows a creditor to treat an undersecured claim as fully secured claim, would have no legal effect. *Id.* at 1129. Although the Tenth Circuit also observed that a creditor who elects to have its entire claim treated as secured by making the § 1111(b) election "relinquishes his right to vote on the plan," that observation was not necessary or essential to the Court's ruling on whether undersecured claims secured by the debtor's real property can be bifurcated in chapter 11 cases. *Id*.

Further, it is possible the Tenth Circuit's statement in *Wade* that a creditor making the § 1111(b) election "relinquishes his right to vote on the plan" was intended to refer only to an undersecured creditor's unsecured deficiency claim. By making the § 1111(b) election an undersecured creditor forgoes an unsecured deficiency claim thereby relinquishing the right to vote such claim. *In re Cheerview Enters., Inc*., 586 B.R. 881, 895 (Bankr. E.D. Mich. 2018).

**B.     Holders of Impaired Secured Claims Who Make the § 1111(b) are Entitled to Vote to Accept or Reject a Chapter 11 Plan**

A determination that a secured creditor making the § 1111(b) election relinquishes its right to vote its secured claim, not just its unsecured deficiency claim, fails to take into account

or misinterprets the voting provisions of § 1126 and the meaning of impairment under § 1124; renders § 1129(a)(7)(B) meaningless; and defeats the purpose of § 1111(b).

    1.    *Under §§ 1124 and 1126, a creditor is entitled to vote an impaired allowed secured claim regardless of whether the § 1111(b) election is made.*

Section 1126(a) provides that the "holder of a claim or interest allowed under section 502 . . . may accept or reject a plan." Acceptance or rejection of a plan is accomplished by casting a ballot voting to accept or reject.[3] Section 1126(f) creates an exception to the right of a holder of an allowed claim or interest to vote to accept or reject a plan. That Code section provides that each holder of a claim or interest that is not impaired by a plan is conclusively presumed to have accepted the plan, and solicitation of votes with respect to such holder is not required.[4] The Code contains no exception to the right to vote if the § 1111(b) election is made.

Because only holders of impaired allowed secured claims are entitled to vote, with limited exceptions not applicable here,[5] whether a creditor making the § 1111(b) election thereby relinquishes the right to vote depends on whether making the election renders the secured claim unimpaired. Section 1124 governs impairment of claims or interests.

To be unimpaired by a plan, the debtor's plan must either "leave[] unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," § 1124(1), or satisfy a set of criteria to cure any default, reinstate the claim's

---

[3] *See* Official Form B314 (Class [ ] Ballot for Accepting or Rejecting Plan of Reorganization).
[4] Section 1126(f) provides:
    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.
[5] Section 1126 creates two other exceptions to the right to vote that are not applicable here. Under § 1126(e), the Court may designate any entity as not being entitled to vote who does not vote in good faith or whose vote was not solicited in good faith. Under § 1126(g), a creditor is deemed not to have accepted a plan if the creditor will not receive or retain any property under the plan on account of the claim.

-4-

Case 20-12241-j11    Doc 285    Filed 12/09/21    Entered 12/09/21 15:07:15 Page 4 of 10

maturity date, compensate the creditor for any damages, and not otherwise "alter the legal equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." § 1124(2).[6]

"In general, a class of claims is impaired under section 1124 if the plan alters the legal, equitable or contractual rights to which the holders of such claims are otherwise entitled, unless the only alteration is the reinstatement of the original maturity and curing defaults with respect to an accelerated debt." 7 Collier on Bankruptcy ¶ 1124.02 (Richard Levin & Henry J. Sommer eds., 16th ed.). For example, changing the contractual interest rate,[7] making deferred payments on terms different from the original contract,[8] or stretching payment beyond the maturity of its original contract,[9] all constitute impairment of the claim. A claim can also be impaired by changing noneconomic contract terms.

Even if a creditor makes the § 1111(b) election, the creditor's secured claim is impaired by the plan if, for example, the plan changes contract rates of interest, provides for deferred payments different from the terms of the original contract, or alters the maturity date or noneconomic terms of the original contract. There is no § 1111(b) election exception to impairment under the terms of § 1124.

---

[6] *See also* 7 Collier on Bankruptcy ¶ 1124.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Under section 1124(2), in general, the plan can leave a class of claims or interests unimpaired by curing defaults, reinstating the maturity of the claims or interests, compensating the holders for any damages, and not otherwise impairing the rights of the holders.").
[7] *In re Valencia Flour Mill, Ltd.*, 348 B.R. 573, 577 (Bankr. D.N.M. 2006) (creditor whose claim under debtor's proposed plan would be paid at an interest rate other than the contract rate was impaired).
[8] *In re G.L. Bryan Invs., Inc.*, 340 B.R. 386, 390 (Bankr. D. Colo. 2006) (citing *In re Grandfather Mountain Ltd.*, 207 B.R. 475, 485 (Bankr. M.D.N.C. 1996)).
[9] 7 Collier on Bankruptcy ¶ 1124.03 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[A] delay in payment of a claim beyond its contractual maturity date results in impairment.") (citing *G.L. Bryan,* 340 B.R. at 391).

> 2. *An undersecured creditor making the § 1111(b) election would relinquish the right to vote its secured claim only if making the election rendered the creditor's secured claim unimpaired.*

As determined above, an undersecured creditor making the § 1111(b) election to treat its entire claim as secured would relinquish its right to vote only if making the election rendered the creditor's entire claim unimpaired. In *Ashley River Consulting,*[10] the bankruptcy court, relying on *Wade* and *680 Fifth Ave. Assocs.*,[11] found that that a creditor making the § 1111(b) election relinquishes its right to vote its secured claim. The *Ashley* Court explained that a creditor making the § 1111(b) election cannot vote its secured claim because the election renders the secured claim unimpaired.[12] *680 Fifth Ave* likewise states that, "[a] creditor [making the § 1111(b) election] therefore forfeits its right to vote on the plan because there is no undersecured deficiency claim and the secured claim is unimpaired."[13]

This Court agrees that a creditor would relinquish the right to vote its secured claim by making the election if making the election rendered a creditor's secured claim unimpaired. But this Court disagrees with the proposition that by making the § 1111(b) election a creditor's secured claim automatically and necessarily becomes unimpaired. As explained above, even if the § 1111(b) election is made, the Court must apply the impairment provisions of § 1124 to

---

[10] *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 6848113 (Bankr. S.D.N.Y. Nov. 6, 2015).
[11] *680 Fifth Ave. Assocs. v. Mutual Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.)*, 156 B.R. 726 (Bankr. S.D.N.Y.), *aff'd*, 169 B.R. 22 (S.D.N.Y. 1993), *aff'd*, 29 F.3d 95 (2d Cir. 1994).
[12] *Ashley River Consulting,* 2015 WL 6848113, at *10 ("Normally, a creditor making an election under section 1111(b)(2) of the Bankruptcy Code forfeits its right to vote on a plan because it relinquishes its undersecured deficiency claim and *its secured claim is unimpaired* because the creditor must be paid the full amount of his claim over time, so long as the present value of such payments equals the value of the collateral.") (emphasis added) (citing *680 Fifth Ave.*, 156 B.R. at 733 and *Wade*, 39 F.3d at 1129).
[13] 156 B.R. at 733.

determine whether the holder of a secured claim is impaired and entitled to vote, or unimpaired and deemed to have accepted the plan by virtue of § 1126(f).

      3.      *If making the § 1111(b) election had the effect of making a secured claim unimpaired, § 1129(a)(7)(B) would be meaningless.*

If making the § 1111(b) election rendered a secured claim unimpaired, § 1129(a)(7)(B) would be meaningless. A plan proponent can satisfy § 1129(a)(7) by satisfying either subsection (A) or (B) of that section. Section 1129(a)(7)(B) provides:

With respect to each impaired class of claims or interests—

. . . .

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

By its own terms, § 1129(a)(7)(B) applies only to *impaired* classes claims or interests making the § 1111(b) election. If a class of claims or interests making the § 1111(b) election is automatically unimpaired by virtue of making the § 1111(b) election, there could never be an impaired class of claims or interests to which § 1129(a)(7)(B) would apply. Section 1129(a)(7)(B) would be rendered meaningless.

      4.      *If making the § 1111(b) election rendered a secured claim unimpaired, it would defeat the purpose of § 1111(b) because the creditor would lose the protections of § 1129(b)(2)(A).*

Section 1129(b)(2)(A) often is the most important protection for secured creditors who oppose confirmation of a plan because it sets out the requirements a debtor must satisfy to confirm a plan over the rejection of an impaired secured class of creditors. If making the § 1111(b) election automatically rendered a creditor's claim unimpaired, such creditor would relinquish its unsecured deficiency claim without reaping the benefit of § 1129(b)(2)(A) applied

Case 20-12241-j11    Doc 285    Filed 12/09/21    Entered 12/09/21 15:07:15 Page 7 of 10

to its allowed secured claim determined without bifurcation. That would defeat the very purpose of § 1111(b)(2).

The § 1111(b) election is made when a class of claims eligible to make the election elects application of § 1111(b)(2) by at least two-thirds in amount and more than half in number of allowed claims of such class. §§ 1111(b)(1)(A)(i) and (B). By making the election, each claim in the class is secured claim to the extent that such claim is allowed and the claim is not subject to bifurcation under § 502(a). *See* § 1111(b)(2). If, as is ordinarily the case, each secured claim is classified separately, then each holder of a secured claim as the sole member of the class has the right to decide whether the class will make the § 1111(b) election.

In *In re River Canyon Real Est. Invs., LLC*, 495 B.R. 526, 528 (Bankr. D. Colo. 2013), the Court aptly explained how § 1111(b) works:

> Assuming the debtor is retaining the secured property post-confirmation, § 1111(b) gives each class of secured creditors—whether the claims held were originally recourse or nonrecourse—two choices. First, the class of secured creditors may do nothing, in which case their allowed claims will be treated as recourse claims and bifurcated into secured and unsecured portions by operation of § 506(a). Second, the class of secured creditors, subject to certain limitations, may make the § 1111(b) election and, if so, the entire amount of the allowed claims of that class will be treated as fully secured, rather than bifurcated under § 506(a). A secured creditor class that makes the § 1111(b) election waives its right to any unsecured deficiency claims that would otherwise arise under § 506(a).

The purpose of the § 1111(b) election is to protect an undersecured creditor, in the context of a cramdown where the debtor seeks to retain the collateral, by giving the creditor the opportunity to benefit from the post-confirmation appreciation of the collateral and by protecting the creditor from a court's undervaluation of the collateral until the debtor pays an amount equal to the total amount of the creditor's allowed claim, determined without bifurcation into secured

and unsecured components.[14] If the debtor seeks to retain collateral securing the claim, to satisfy the requirements of § 1129(b)(2)(A) with respect to a class of secured creditor(s) making the § 1111(b) election:

> [T]he debtor must pay to the electing creditor a stream of payments that meets two tests: (i) The stream of payments must have a present value equal to the value of the creditor's collateral (i.e., the allowed amount of the creditor's secured claim before the 1111(b) election), and (ii) the total amount of the creditor's stream of payments must equal the amount of the creditor's debt.[15]

By application of this section, the amount of the debt secured by the collateral is not limited to the value of the collateral at the time of plan confirmation.

If making the § 1111(b) election rendered the creditor's secured claim unimpaired, a creditor making the election would waive the protections of § 1129(b)(2)(A) because such creditor would not be able to reject the debtor's plan. In chapter 11 cases not governed by subchapter V, § 1129(b)(2)(A) applies to a class of secured claims only if the requirements of § 1129(a)(8) are not met. Section § 1129(a)(8) requires either a) acceptance by the class; or b) unimpairment of the class.[16] If making the § 1111(b) election automatically rendered the secured claims in the class unimpaired, § 1129(a)(8) would be satisfied because the class would not be

---

[14] *See In re Scrubs Car Wash, Inc.*, 527 B.R. 453, 456 (Bankr. D. Colo. 2015); *In re Red Mountain Mach. Co.*, 451 B.R. 897, 903 (Bankr. D. Ariz. 2011) ("It is universally recognized that the purpose of the § 1111(b) election is to allow the secured creditor to protect its interest in collateral that might appreciate in value or be worth more than the court determined when a debtor's plan permits a "cash out" at a depressed value."); *In re Sroa*, No. 11-10078, 2011 WL 5855359, at *1 (Bankr. N.D. Cal. Nov. 17, 2011) ("The purpose of the § 1111(b) election is to allow an undersecured creditor the opportunity to capture future appreciation in the value of its collateral.") (citing *In re Tuma*, 916 F.2d 488, 491 (9th Cir. 1990)).

[15] *In the Matter of Topp's Mechanical Inc.*, No. BK21-40038-TLS, 2021 WL 5496560, at *3 (Bankr. D. Neb. Nov. 23, 2021) (quoting *Norton Creditors' Rights Handbook*, Criteria for confirmation—Section 1111(b), § 18:49). In addition to providing a potential benefit from the post-confirmation appreciation of the collateral, the § 1111(b) election may have the effect of increasing the required distribution to an undersecured creditor depending on the value of the collateral in relation to the amount of the total claim, the interest rate required to satisfy the present value requirement, the period of repayment, and the distribution to unsecured creditors.

[16] Section 1129(a)(8) provides "With respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan."

impaired and, by operation of § 1126(f), the class would be conclusively presumed to have accepted the plan. Creditors in the class making the § 1111(b) election therefore could not invoke the cramdown protections.

Similarly, under subchapter V, secured claims in a class are entitled to the protections of § 1129(b)(2)(A) only if the class of secured claims is impaired under and has not accepted the plan. *See* §§ 1191(b) and (c)(1). If a class of secured creditors making the § 1111(b) election is deemed unimpaired, the creditors in the class would not be protected by § 1129(b)(2)(A).

Section § 1111(b) does not operate to defeat its very purpose by rendering a claim unimpaired to deprive electing creditors of the protections of § 1129(b)(2)(A) while taking away the creditor's unsecured deficiency claim. No creditor would knowingly make the § 1111(b) election if that were the result.

WHEREFORE, IT IS HEREBY ORDERED that Surv-Tek may vote its secured claim if it makes the § 1111(b) election, provided it has an impaired secured claim allowed under § 502 or temporarily allowed for voting purposes under Fed.R. Bankr.P. 3018(a), with the issue of impairment determined in accordance with § 1124.

*[Signature]*
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 9, 2021

COPY TO:

Nephi Hardman
Attorney for Debtor
Nephi D. Hardman Attorney at Law, LLC
9400 Holly Ave NE Bldg 4
Albuquerque, NM 87122

Christopher M. Gatton
Attorney for Surv-Tek, Inc.
Giddens, Gatton & Jacobus, P.C.
10400 Academy Rd., #350
Albuquerque, NM 87111