UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: S-Tek 1, LLC, No. 20-12241-j11

Debtor.

**MEMORANDUM OPINION REGARDING MOTION TO DETERMINE SCOPE OF SECURITY INTEREST OF SURV-TEK, INC.**

Before the Court is debtor S-Tek 1, LLC's ("Debtor") *Motion to Determine Scope of Security Interest of Surv-Tek, Inc.*, Doc. 266 (the "Motion") filed November 12, 2021. Surv-Tek, Inc. ("Surv-Tek") filed an objection, Doc. 282, and Debtor filed a reply, Doc. 284. At a status conference held November 10, 2021, the parties consented to the Court determining the issues raised in the Motion in a contested matter instead of an adversary proceeding, and without a hearing. *See* Doc. 265 and the record of the status conference. For the reasons explained below, the Court will grant in part and deny in part Debtor's Motion.

The Court determines that despite redundancy in the language of the security agreement, the plain language grants Surv-Tek a security interest in after-acquired property. The Court will deny Debtor's Motion to the extent it argues that Surv-Tek does not have a security interest in accounts receivable and other collateral, other than the Settlement Funds, under the after-acquired property clause.

However, the Court agrees with Debtor that Surv-Tek does not have a security interest in the Settlement Funds (as defined below) received from settlement of Debtor's commercial tort claim(s) against one Dennis Smigiel. Debtor argued that UCC § 9-204 prohibits an after-acquired collateral provision in a commercial tort claim, and it should apply to the Settlement Funds as proceeds of a commercial tort claim. Surv-Tek responded that its security interest in accounts extends to the Settlement Funds. Based on its analysis of the Uniform Commercial Code in light

of the case law, the Court concludes that Surv-Tek does not have a security interest in the Settlement Funds.

## FINDINGS OF FACT[1,2]

Debtor is a limited liability company providing commercial and residential land surveying and platting services in New Mexico. In 2018, Debtor entered into an agreement to purchase the surveying business from Surv-Tek. Doc. 187.

In connection with the purchase, Debtor executed a promissory note payable to the order of Surv-Tek, and Surv-Tek and Debtor executed a security agreement (the "Security Agreement"), in which S-Tek granted a security interest to Surv-Tek in the described property. The Grant of Security Interest clause in the Security Agreement provides:

> **GRANT OF SECURITY INTEREST**. For valuable consideration, Debtor grants to Secured Party [Surv-Tek] a security interest in the Collateral to secure the Indebtedness and agrees that Secured Party shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Secured Party may have by law.

The definition of "collateral" under the Security Agreement is as follows:

> **COLLATERAL DESCRIPTION**. **[FIRST PART][3]** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Debtor

[1] The Court takes judicial notice of the docket and claims register, and the documents therein, in this bankruptcy case and related adversary proceeding, Adv. No. 20-1074. See Fed. R. Evid. 201(b)(2) and (c); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its own docket), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[T]he bankruptcy court appropriately took judicial notice of its own docket . . .").

[2] These findings of fact are based on background facts taken in evidence at other hearings and are not in dispute.

[3] The Court added the references to FIRST PART and SECOND PART to facilitate discussion of different portions of the security agreement.

is giving to Secured Party a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

> All Goods, Furniture Equipment, Inventory, Accounts, Account Receivables [*sic*], General Intangibles, Contract Rights, and other personal property owned by Debtor as of the Effective Date of this Agreement, and all proceeds and products of the foregoing including replacements thereof acquired with proceeds or by trade or exchange of property of the Debtor owned as of the Effective Date hereof.

**[SECOND PART]**[4] In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

> (A) All products and proceeds of any of the Collateral described in this Collateral section.
>
> (B) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the Collateral described in this Collateral section.
>
> (C) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the Collateral described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.
>
> (D) All records and data relating to any of the Collateral described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

S-Tek Claim 6-2, Ex. E.[5] The Security Agreement was effective as of January 1, 2019 (the "Effective Date").

By July 2019, Debtor filed an action against, among other parties, Surv-Tek and Mr. Smigiel, alleging tortious conduct related to Debtor's purchase of Surv-Tek's surveying business.

---

[4] *See* n. 3, *supra*.

[5] The Court takes judicial notice of the promissory note and security agreement. The execution of those documents in connection with the purchase and sale is not in dispute.

Mr. Smigiel was the broker for the transaction. The claim(s) against Mr. Smigiel included negligent misrepresentation and possibly fraud. *See* Adv. No. 20-01074-j, Doc. 13-15.[6]

On November 11, 2020, Debtor and Mr. Smigiel entered into a settlement agreement under which Mr. Smiegel would pay Debtor $30,000 (the "Settlement Funds") in exchange for the release of all claims against him arising from the sale. Mr. Smigiel paid the Settlement Funds to Debtor on December 2, 2020. *See* Doc. 187.

Later in the day on December 2, 2020 (the "Petition Date"), Debtor filed its voluntary chapter 11 petition. Doc. 1.

## DISCUSSION

The Court first will address whether Surv-Tek has a security interest in after-acquired accounts receivable and other after-acquired property, and then will address whether the security interest extends to the Settlement Funds.

### (1) Surv-Tek Has a Security Interest in After-Acquired Accounts Receivable

In the Motion, Debtor argues that by granting Surv-Tek a security interest in the collateral described in the above collateral description, Debtor did not grant Surv-Tek a security interest in after-acquired receivables. Debtor's argument is three-fold:

First, Debtor argues that in the First Part of the Collateral Description, "'now owned or hereafter acquired' applies only to what is 'owned by Debtor as of January 1, 2019,'" and "[b]ecause it is impossible for the Debtor to acquire something after January 1, 2019 that was 'owned by Debtor on January 1, 2019,' the 'or hereafter acquired' language in First Part is inoperative." Motion ¶ 20. Debtor reasons that "[n]ot only is this result mandated by a

[6] Debtor's first amended complaint is not clear with respect to which claims were brought against Mr. Smigiel, with the exception of negligent misrepresentation, in which Mr. Smigiel was identified by name. Many of the remaining claims, though nominally brought against all defendants, do not appear to involve factual allegations of conduct by Mr. Smigiel.

straightforward reading of the First Part, but it also avoids the alternate interpretation in which 'as of the Effective Date of this Agreement' is rendered surplusage at best and contradictory at worst." *Id.* at ¶ 21.

Second, Debtor argues that the only operative after-acquired property clause in the Security Agreement is in the Second Part of the Collateral Description, which does not apply to accounts receivable.

Finally, Debtor argues because none of the accounts receivable that were outstanding on the Effective Date of the Security Agreement existed on the bankruptcy petition date, Surv-Tek's security interest does not extend to any accounts receivable.

The Court finds Debtor's arguments, while creative, to be wholly without merit.

"When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 1987-NMSC-117, ¶ 6, 106 N.M. 577, 579; *see also Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 8, 110 N.M. 128, 129 ("It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties."); *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 702 (quoting *CC Housing Corp.*, 1987-NMSC-117, ¶ 6).

In the Security Agreement, Debtor clearly and unambiguously grants Surv-Tek a security interest in after-acquired accounts receivable. The Collateral Description provides (i) that "the word 'Collateral' means the following described property, whether *now owned* or hereafter acquired . . ." and (ii) the following described property includes "Account Receivables [*sic*] . . . *owned by Debtor as of the Effective Date of this Agreement* . . . ." (emphasis added). "Now

owned" refers to accounts receivable owned by Debtor as of the Effective Date of the Security Agreement. While it may have been unnecessary to clarify that "now owned" refers to collateral owned as of the Effective Date of the Security Agreement, that clarification does not render the Collateral Description ambiguous or the after-acquired property clause in the First Part of the Collateral Description unenforceable.

The first three sections of the Second Part of the property description are designed to create an expansive definition of proceeds, while the fourth section is designed to grant a security interest in records and data relating to the Collateral.

Because Debtor granted Surv-Tek a security interest in the "Collateral," and the "Collateral" includes after-acquired accounts receivable, Debtor granted Surv Tek a security interest in after-acquired receivables. The after-acquired property clause is also valid with respect to other after-acquired collateral, as defined in the Security Agreement, other than the Settlement Funds.

**(2) Surv-Tek Does Not Have a Security Interest in the Settlement Funds**

Debtor argues Surv-Tek does not have a security interest in the Settlement Funds. First, Debtor argues that the after-acquired property clause in the Security Agreement does not extend to any after-acquired property, including the Settlement Funds. Second, Debtor argues that Surv-Tek does not have a security interest in the Settlement Funds because the Settlement Funds are not proceeds of Surv-Tek's original collateral. Finally, Debtor argues that, even if the after-acquired property clause is valid, because Surv-Tek's security interest does not extend to commercial tort claims against Mr. Smigiel, it does not extend to the Settlement Funds as after-acquired property or proceeds of the commercial tort claims. Surv-Tek counters that "the

settlement funds, being funds in an account of the Debtor, constitute collateral whenever acquired." Doc. 282 at 4.

The Court has rejected Debtor's argument that the after acquired property clause in the Security Agreement does not extend to any after acquired property. The Court therefore rejects Debtor's first argument predicated on the after-acquired property clause in the Security Agreement not extending to any after-acquired property. The Court therefore will address whether the Security Agreement encumbers the Settlement Funds even though the Settlement Funds came into existence after the Effective Date of the Security Agreement.

Under the UCC, a "commercial tort claim" includes "a claim arising in tort with respect to which: . . . the claimant is an organization." UCC § 9-102(a)(13).[7] Debtor is an organization and brought claim(s) sounding in tort against Mr. Smigiel, on the basis of fraud and negligent misrepresentation. The claim(s) against Mr. Smigiel is therefore a commercial tort claim. The UCC generally limits the granting of a security interest in tort claims, but provides that a security interest may be granted in commercial tort claims in limited circumstances:

- § 9-102(a)(2) – the definition of "account" excludes commercial tort claims,
- § 9-102(a)(42) – the definition of "general intangibles" excludes commercial tort claims,
- § 9-102(a)(44) – the definition of "goods" excludes commercial tort claims,
- § 9-108(e) – a description by type is insufficient for a commercial tort claim,[8]
- § 9-109(d)(12) – no security interest may be granted in a tort claim unless it is a commercial tort claim but §§ 9-315 and 9-322 apply with respect to proceeds and priorities in proceeds,

[7] New Mexico as has adopted the Uniform Commercial Code at NMSA § 55-1-101 to 55-12-111. References in this opinion to UCC refer to the Uniform Commercial Code as adopted in New Mexico.

[8] "A description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of: (1) a commercial tort claim[.]" UCC § 9-108(e).

- § 9-204(b)(2) – an after-acquired property provision cannot grant a security interest in a commercial tort claim.[9]

*(a) Surv-Tek did not have a security interest in the commercial tort claim against Mr. Smigiel either as original collateral or after-acquired property*

Debtor's claims against Mr. Smigiel that resulted in the Settlement Funds were commercial tort claims. It is clear that Surv-Tek did not have a security interest Debtor's commercial tort claims against Mr. Smigiel either as original collateral or after-acquired property. A debtor may grant a security interest in a commercial tort claim as original collateral. *See* UCC § 9-109(d)(12). However, a description only by type of collateral is an insufficient description of a commercial tort claim. UCC § 9-108(e)(1); *see also Ferry Rd. Props. v. RL BB ACQ II-TN, LCC (In re Ferry Rd. Props.)*, No. 12-5022, 2012 WL 3888201 (Bankr. E.D. Tenn. Sept. 7, 2012) ("[T]he grant of a security interest in a commercial tort claim must be described with specificity."). The Security Agreement does not describe the collateral to include any commercial tort claims against Mr. Smigiel. Therefore, Surv-Tek did not have a security interest in Debtor's commercial tort claims against Mr. Smigiel as original collateral. In addition, a security interest does not attach to a commercial tort claim as after-acquired property. *See* UCC § 9-204(b)(2). Therefore, Surv-Tek did not have a security interest in Debtor's commercial tort claims against Mr. Smigiel as after-acquired property.

*(b) Surv-Tek does not have a security interest in Debtor's right to funds payable or paid in settlement of the commercial tort claims against Mr. Smigiel*

Where as here no security interest has attached to Debtor's commercial tort claims against Mr. Smigiel, courts are split on whether a creditor can have a security interest in a

[9] "A security interest does not attach under a term constituting an after-acquired property clause to: . . . a commercial tort claim." UCC § 9-204(b)(2).

debtor's right to funds payable or paid in settlement of a commercial tort claim under other grants collateral such as general intangibles or, as Surv-Tek asserts, accounts.

One line of cases holds that a secured party cannot have a security interest in the proceeds of a commercial tort claim[10] under grants of collateral other than a grant of a security interest in a commercial tort claim, for example under an after-acquired property provision for general intangibles.[11] These cases explain that the UCC has "clear directives aimed at limiting a creditor's access to commercial tort claims and proceeds therefrom." *In re Zych*, 379 B.R. 857, 864 (Bankr. D. Minn. 2007). "[B]ecause the drafters of the UCC included heightened requirements for the identity of commercial tort claims, any proceeds from a commercial tort claim would be excluded from a security agreement's broadly written after-acquired general intangibles clause as well." *In re Alliance Ins. Grp. of Arkadelphia, Inc.*, No. 18-71472, 2019 WL 1992622, at *4 (Bankr. W.D. Ark. 2019) (denying motion to abandon because bank did not have security interest in proceeds of commercial tort claims and therefore the claims were not of inconsequential value and benefit to the estate). The "settlement of a commercial tort claim does

---

[10] The Court recognizes that this use of "proceeds" does not conform with the strict definition of "proceeds" under the UCC, where "proceeds" arise out of collateral. *See* UCC § 9-102(a)(64). In discussing whether a security interest extends to funds paid or payable on account of a commercial tort claim where the commercial tort claim itself is not collateral, courts often refer to those funds as proceeds of the commercial tort claim.

[11] *Bayer CropScience, LLC v. Stearns Bank Nat'l Ass'n*, 837 F.3d 911, 916 (8th Cir. 2016) (holding that after-acquired general intangibles clause could not create security interest in proceeds of commercial tort claim); *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 54, ¶¶ 25-28, 441 P.3d 841, 848-49 (holding that a "'general intangibles' clause is insufficient to create a security interest in the proceeds of a commercial tort claim, absent specific identification of the claim"); *In re Zych*, 379 B.R. 857, 863–64 (Bankr. D. Minn. 2007) (holding that creditor was precluded from having a security interest in proceeds of debtor's commercial tort claim); *In re Alliance Ins. Grp. of Arkadelphia, Inc.*, No. 18-71472, 2019 WL 1992622, at *4 (Bankr. W.D. Ark. 2019) (following *Bayer CropScience* and holding that bank did not have lien on proceeds of a commercial tort claim under after-acquired general intangibles provision); *DB NPI Century City, LLC v. Legendary Investors Group No. 1, LLC*, Nos. B271089 & B277203, 2019 WL 2082039, at *14 (Cal. Ct. App. 2019) (unpublished) (holding that creditor did not have lien on proceeds of a commercial tort claim, where "the commercial tort claim itself was never collateral," and thus "the settlement proceeds are not either").

not convert the proceeds into collateral covered by a security agreement." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 54, ¶ 26, 441 P.3d 841, 848 (holding that creditor did not have security interest in funds from settlement of malpractice claim under "general intangibles" clause of security agreement because they were proceeds of a commercial tort claim and the claim was not specifically identified in the security agreement).

A leading case in this line is the decision in *Bayer CropScience, LLC v. Stearns Bank Nat'l Ass'n*, issued by the Eighth Circuit Court of Appeals. 837 F.3d 911 (8th Cir. 2016). In *Bayer CropScience*, the Eighth Circuit analyzed claims of competing priority by two banks in settlement funds obtained by "Texana" in a commercial tort claim against "Bayer." One bank had a security interest specifically granted in the Bayer claim, and the other had a prior perfected security interest in, among other things, Texana's general intangibles. The Eighth Circuit analyzed the UCC's "heightened identification requirements to encumber commercial tort claims" and determined that the second bank "has no interest in the proceeds of the Bayer Suit as general intangible." *Bayer CropScience*, 837 F.3d at 915-16. The court noted that "[t]he UCC imposes this heightened description requirement 'in order to prevent debtors from inadvertently encumbering' commercial tort claims." *Id.* at 916 (citing Texas UCC § 9.108 cmt. 5). Citing White and Summers' *Uniform Commercial Code* treatise, the Eighth Circuit concluded that proceeds of commercial tort claims cannot be encumbered by an after-acquired general intangibles clause:

> Accordingly, we hold that the drafters of the UCC, in implementing the heightened identification requirements of commercial tort claims including the requirement that the commercial tort claim to be in existence at the time it is encumbered, intended for the proceeds of a commercial tort claim to be excluded from an after-acquired general intangible clause. *See* 4 James J. White, Robert S. Summers, & Robert A. Hillman, *Uniform Commercial Code* § 31:5 (6th ed. 2015) (questioning "if we recognize a proceeds claim arising from a security agreement that was signed before the tort claim came into existence to be effective as to funds later paid to settle the tort, have we not

voided the rule in 9–108(e)(1)?").

*Bayer CropScience*, 837 F.3d at 916.

Another line of cases holds the opposite: that a creditor can have a security interest in the proceeds of a commercial tort claim under other grants of security interest.[12] These cases determine that once a commercial tort claim has settled, it is a payment intangible and thus not limited by the restrictions on commercial tort claims. The Ninth Circuit Bankruptcy Appellate Panel in *In re Wiersma* relied on Comment 15 to UCC § 9-109(d)(12), which states:

> Subsection (d)(12) narrows somewhat the broad exclusion of transfers of tort claims under former Section 9-104(k). This Article now applies to assignments of commercial tort claims (defined in Section 9-102) as well as to security interests in tort claims that constitute proceeds of other collateral (e.g., a right to payment for negligent destruction of the debtor's inventory). Note that once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort.

*In re Wiersma*, 324 B.R. 92, 107 (B.A.P. 9th Cir. 2005) (quoting UCC § 9-109(d)(12) cmt. 15).[13]

*Wiersma* concluded that "[o]nce the payment intangible comes into existence, in this case as an after-acquired settlement fund general intangible, it is automatically within the scope of Article 9 as part of the secured creditor's collateral." *Wiersma*, 324 B.R. at 107. *Wiersma* defended this conclusion by explaining that structured settlements are routinely pledged as collateral. *Id.*

This Court agrees with the reasoning in *Bayer CropScience* and other cases that hold that a secured party cannot have a security interest in the proceeds of a commercial tort claim under

[12] *E.g., In re Wiersma*, 324 B.R. 92, 105-07 (B.A.P. 9th Cir. 2005) (holding that bank had security interest in settlement funds under after-acquired general intangible provision, despite settlement arising from commercial tort claims); *In re Sarah Michaels, Inc.*, 358 B.R. 366 (Bankr. N.D. Ill. 2007) (suggesting that security interest would have attached in settlement of commercial tort claim as "payment intangible" if another creditor had not already had a judgment lien in place).

[13] *See also* UCC § 9-102, cmt. 5, which states that "a security interest in a tort claim also may exist under this article if the claim is proceeds of other collateral."

grants of collateral other than a grant of a security interest in a commercial tort claim. A secured party cannot make an end run around the limitations in the UCC on a debtor granting a security interest in a commercial tort claim by acquiring a security interest in amounts payable or paid as a result of the claim under other grants of collateral. The value of a commercial tort claim lies in the recovery or potential recovery on the claim. Stripped of the right to recover, a commercial tort claim has no value. If a creditor could evade the UCC limitations on granting a security interest in a commercial tort claim simply by obtaining a security interest under a generalized grant of security interest in general intangibles, not in the claim itself but instead on what gives the claim value – recovery on the claim, those limitations would be meaningless.

Further, if a grant of security interest in general intangibles were sufficient to create a security interest in the debtor's recovery on commercial tort claim, if the debtor obtained a damages award on a commercial tort claim against the secured party itself, the secured party would have a security interest in the damages awarded against it. The UCC limitations on a debtor granting a security interest in a commercial tort claim should be construed to prevent that perverse result.

The Court's reading of the UCC is consistent with Comment 15 to UCC § 9-109(d)(12). The comment suggests that a security interest in the debtor's inventory and its proceeds extends to a right to payment for negligent destruction of the inventory. The comment also points out that "once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort." UCC § 9-109(d)(12) cmt. 15. This latter point supports the notion that a debtor can grant a security interest as original collateral in the debtor's right to payment under a settlement of a consumer

tort claim, such as the consumer's rights under a structured settlement, even though the UCC does not permit a security interest in a consumer tort claim itself.

Further, Surv-Tek did not assert, and the Court sees no basis for finding, that Debtor's commercial tort claim against Mr. Smigiel was proceeds of Surv-Tek's original collateral. There was no damage to any of Surv-Tek's collateral that gave rise to the claim against Mr. Smigiel. *Compare Bayer CropScience, LLC v. Stearns Bank Nat'l Ass'n*, 837 F.3d 911, 916 (8th Cir. 2016) (when debtor's equipment, that served as collateral, was damaged, creditor's security interest attached to the right of recovery for damages to the equipment).

The intent behind the original exclusion of commercial as well as consumer tort claims from the UCC, which also underlies the more recent limitations on the grant of security interests in commercial tort claims, further justifies the Court following the line of cases under which a security interest in general intangibles, contract rights, and accounts does not extend to funds payable or paid as a result of a commercial tort claim. "Torts were seen as involving personal relationships, and assignments of tort claims to finance litigation were invalidated as offensive to the public policy against maintenance, champerty and barratry." *Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, No. 13 CV 6804 VB, 2015 WL 5459833, at *5–6 (S.D.N.Y. June 2, 2015). "This exclusion was justified because tort claims and judgments do not customarily serve as commercial collateral." *Id.* (internal citations omitted). The UCC made an exception allowing the grant of security interest in a commercial tort claim but only if the claim was in existence when the security interest was granted and the parties specifically identified the claim as part of the collateral. Those limitations ensure that a creditor obtain the benefit of a commercial tort claim under a grant of collateral only if it is clear the debtor specifically intended to confer that benefit.

In the case before this Court, there is an additional policy reason for excluding the Settlement Funds from the scope of Surv-Tek's security interest in accounts, general intangibles, and contract rights. The Debtor settled commercial tort claims against Mr. Smigiel arising from alleged tortious conduct by both Surv-Tek and Mr. Smigiel. Surv-Tek should not benefit from the settlement with Surv-Tek's own alleged co-tortfeasor. Further, Surv-Tek did not have a security interest in Debtor's claims against Mr. Smigiel. The Debtor should not be penalized by settling its claims against Mr. Smigiel prepetition by increasing Surv-Tek's collateral position by the amount of the Settlement Funds. Such a result would violate the fundamental public policy that promotes settlement.

For these reasons, the Court is persuaded by the line of cases which hold that a secured party does not obtain a security interest in a debtor's right to funds payable or paid in settlement of a commercial tort claim under other grants collateral such as general intangibles, contract rights or accounts.

## CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part the Motion. The Court will enter a separate order consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 23, 2021

COPY TO:

Nephi Hardman
Attorney for Debtor
Nephi D. Hardman Attorney at Law, LLC
9400 Holly Ave NE Bldg 4
Albuquerque, NM 87122

Chris M. Gatton
Attorney for Surv-Tek, Inc.
Giddens & Gatton Law, P.C.
10400 Academy Rd, NE, Ste 350
Albuquerque, NM 87111

Patrick Malloy, III
Subchapter V Trustee
Patrick J. Malloy, III, Trustee
401 S. Boston Ave, Ste 500
Tulsa, OK 74103

Jaime A. Pena
Office of the U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103-0608