UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  S-Tek 1, LLC, a                                         No. 20-12241-j11
        New Mexico limited liability company,

        Debtor.

## **MEMORANDUM OPINION**

The Court held a final, evidentiary hearing on January 19, 2023, on the request for

approval of compensation for Nephi D. Hardman Attorney at Law, LLC ("Attorney") for the

period from December 2, 2020 through July 31, 2022 (the "Fee Application").[1] Having

considered the Fee Application in light of the evidence presented at the final hearing, the

objections of the United States Trustee[2] and the Subchapter V Trustee,[3] and relevant caselaw, the

Court finds and concludes that the Fee Application should be granted and approves Attorney's

compensation in the amount requested.

## **The Requested Compensation**

Attorney requests approval of total compensation in the amount of $304,210.83

consisting of $274,923.50 in attorney's fees and paralegal fees, $7,629.17 in expenses, and

---

[1] *See* First and Final Application by Attorney for Debtor in Possession for Allowance and Payment of
Compensation as a Chapter 11 Administrative Expense for the Period of December 2, 2020 through July
31, 2022 and Request for Judgment in the Amount of Unpaid Fee Application (Doc. 408).
[2] *See* United States Trustee's Objection to First and Final Application by Attorney for Debtor in
Possession for Allowance and Payment of Compensation as a Chapter 11 Administrative Expenses for the
Period of December 2, 2020 through July 31, 2022 and Request for Judgment in the Amount of Unpaid
Fee Application ("UST's Objection" - Doc. 435).
[3] The Subchapter V Trustee filed a written objection ("Subchapter V Trustee's Objection" – Doc. 433)
but did not participate in the final, evidentiary hearing. The Court excused the Subchapter V Trustee from
appearing at the final hearing, but ruled that it would consider his objection even if he chose not to
appear. *See* Order Resulting from Preliminary Hearing Held November 23, 2022 (Doc. 506). Surv-Tek,
Inc. filed an objection and joinder to the Subchapter V Trustee's objection to the Fee Application (Doc.
434), but did not prosecute the objection at the final hearing. The Court will not consider Surv-Tek Inc.'s
objection. The Debtor, though its principals, also objected to the Fee Application  (Doc. 441), but later
withdrew the objection. *See* Doc. 478.

$21,658.16 in taxes. Of that amount, Attorney has received $90,720.60, leaving an unpaid balance of $213,490.23. The requested compensation covers work Attorney performed in connection with this bankruptcy case and related adversary proceedings.

The Fee Application breaks down the work performed into nine categories: 1) general case administration; 2) statements and schedules; 3) plan of reorganization; 4) claims administration; 5) operating reports and other reports; 6) cash collateral matters; 7) employment and fee applications; 8) litigation with Surv-Tek, Inc. and related parties in adversary proceeding No. 20-1074-j; and 9) litigation with Salls Brothers Construction, Inc. Attorney's hourly rate was $300.00 for the work performed in the Fee Application and the paralegal's hourly rate was $115.00. For work in Adversary Proceeding No. 20-1074j, Attorney did not charge all of his time to Debtor because of his joint representation of non-debtor third parties in that litigation. In accordance with the Court's Order Conditionally Granting Motion for Joint Representation (Doc. 252), Attorney allocated 70% of the time spent to Debtor, and 30% of the time spent to the non-debtor third parties.

### The Fee Application Must be Treated as an Interim Request for Compensation

Attorney asks the Court to grant final approval of Fee Application with Attorney reserving the right to file additional applications for approval of compensation in this bankruptcy case for legal services provided to Debtor as debtor in possession. Even though the Fee Application is titled as a "First and Final" application, the Court determined that the Fee Application must be treated as an interim application for approval of compensation because Attorney intends to file another application for compensation for work performed after July 31, 2022. Section 331 of the Bankruptcy Code was enacted so that professionals seeking compensation from the bankruptcy estate could receive interim compensation instead of having

2

to wait until the end of the case. *See In re Moore*, 36 B.R. 323, 327 (Bankr. M.D. Ga. 1984) (citing the legislative history of § 331); *In re Frontier Commc'ns Corp.*, 623 B.R. 358, 361 (Bankr. S.D.N.Y. 2020) ("Applications for compensation under Section 330 are heard at the end of the case, although of course professionals can seek interim compensation under Section 331 of the Bankruptcy Code for services performed."). Because Attorney has performed work subsequent to the period covered by the Fee Application and for which he intends to seek approval of compensation, the Fee Application must be treated as an interim application under 11 U.S.C. § 331,[4] subject to reconsideration prior to any final fee award. *See In re Heritage Real Est. Inv., Inc.*, No. 14-03603-NPO, 2021 WL 1396570, at *12 (Bankr. S.D. Miss. Mar. 12, 2021) ("Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." (quoting *Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Refin. Co.)*, 890 F.2d 1312, 1322 (5th Cir. 1989))).

The Fee Application includes a request for the Court to specify in its order on the Fee Application that the order is a judgment against the Debtor in the amount of the unpaid allowed compensation. It is not appropriate to issue a judgment in the amount of the unpaid allowed compensation because, as explained above, the Fee Application must be treated as an interim fee application subject to further review; consequently a ruling on the Fee Application will be interlocutory.

---

[4] All future references to "Code," "Section," and "§" are to Title 11 of the United Sates Code unless otherwise indicated.

## Background Case History and Overview of Work Attorney Performed[5]

Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 2, 2020 and elected treatment under subchapter V.[6] Debtor filed Debtor's Motion to Employ Attorney on the same date.[7] The Court granted Debtor's Motion to Employ Attorney, authorizing Debtor to pay Attorney 75% of fees and 100% of reimbursable costs and applicable gross receipts taxes, subject to court approval.[8] Upon interim approval of compensation, the Court typically aphorizes the debtor to pay 100% of the approved compensation. Attorney did not receive 75% of the billed fees over the course of Attorney's representation of Debtor during the bankruptcy case, and instead accepted reduced payments averaging $5,000 per month.[9]

Debtor's bankruptcy filing was precipitated by litigation between Debtor and Surv-Tek, Inc. ("Surv-Tek") and related parties (together the "Surv-Tek parties") in state court. When Debtor filed its subchapter V case, the state court had entered an order that would enforce a non-

---

[5] With the parties' consent, the Court took judicial notice of the documents filed in Debtor's bankruptcy case and related adversary proceedings.

[6] *See* Doc. 1.

[7] *See* Doc. 5.

[8] *See* Doc. 84.

[9] The actual payment amounts as reported in the Fee Application are:

| 2021 | 2022 |
|---|---|
| $720.60 on February 10, 2021 (the remainder of the retainer) | $5,000 on January 11, 2022 |
| $10,000 on March 3, 2021 | $5,000 on March 2, 2022 |
| $5,000 on April 23, 2021 | $5,000 on March 15, 2022 |
| $5,000 on April 23, 2021 | $5,000 on April 22, 2022 |
| $5,000 on June 17, 2021 | $5,000 on April 29, 2022 |
| $5,000 on July 17, 2021 | $5,000 on June 7, 2022 |
| $5,000 on July 27, 2021 | $5,000 on August 1, 2022 |
| $5,000 on August 13, 2021 | |
| $5,000 on September 27, 2021 | |
| $5,000 on October 20, 2021 | |
| $5,000 on November 8, 2021 | |
| TOTAL: | $90,720.60 |

4

compete provision that required Debtor to cease its operations if Debtor did not bring the indebtedness owed to Surv-Tek current by a fixed deadline.[10] Debtor did not have the financial ability to bring the indebtedness current. By filing the bankruptcy case, Debtor received the benefit of the automatic stay, which stayed the enforceability of the state court's order and allowed Debtor to continue to operate its business.[11]

Debtor removed the state court action to this Court, initiating Adversary Proceeding No. 21-1074-j (the "Surv-Tek AP"). Debtor asserted counterclaims in the Surv-Tek AP, which, if successful, would have resulted in eliminating the Surv-Tek parties' claims and generating substantial money for the estate. At the time, Debtor's alternative courses of action were 1) to pursue its claims and defenses in the Surv-Tek AP in an attempt to eliminate the Surv-Tek parties' claims and generate funds for the estate to pay creditors; 2) cease its business operations and agree to a dismissal the bankruptcy case or conversion of the chapter 11 case to a case under chapter 7,[12] which would have resulted in priority and nonpriority unsecured creditors receiving nothing on their claims; or 3) settle with the Surv-Tek parties. Settlement, however, was not a viable option. Prior settlement offers during the state court litigation had failed, and Debtor did not have sufficient funds to pay a large settlement to the Surv-Tek parties. Consequently, the third option, settlement, was not a viable option because it would essentially be the equivalent of shutting Debtor's business down.

---

[10] *See* Surv-Tek AP (Doc. 13-127) (Documents filed in state court action, which was removed to this Court initiating the Surv-Tek AP).

[11] *See* Surv-Tek AP, Order Granting, in part, and Denying, in part, Emergency Motion to Stay Enforcement of Order Resulting from Hearing on Order to Show Cause (Doc. 17).

[12] From the date the bankruptcy case was filed, and up until mid-July of 2022, Debtor could not propose a plan that would simply surrender all collateral to Surv-Tek, because it did not have a loan commitment from the New Mexico Community Development Loan Fund ("NMCDLF") from which Debtor could purchase replacement collateral. The commitment from NMCDLF near the outset of the case was for a much smaller amount and was intended for use in attempting to settle with the Surv-Tek parties, which proved unsuccessful.

5

Faced with these alternatives, Debtor chose to pursue the litigation in the Surv-Tek AP. In addition, Debtor and the Surv-Tek parties agreed that the Surv-Tek AP had to be resolved before the Court could consider plan confirmation.

Similarly, it appeared at the time to be critical for the Court to value Surv-Tek's collateral so that Debtor could amend its plan, if necessary, prior to confirmation. The Court held a two-day valuation hearing which resulted in valuation of Surv-Tek's collateral under § 506(a) in the amount of $499,709.54 for confirmation purposes,[13] approximately one-third of the amount of Surv-Tek's proof of claim.[14] Surv-Tek then elected to have its entire claim treated as a secured claim under § 1111(b).[15]

The Surv-Tek parties actively participated in Debtor's bankruptcy case throughout the entire case, regularly contesting Debtor's use of cash collateral in an effort to protect the Surv-Tek parties' interests, litigating the Surv-Tek AP, and contesting confirmation. Overall, the bankruptcy case and the Surv-Tek AP was hard fought by both Debtor and the Surv-Tek parties. Attorney zealously represented Debtor throughout the bankruptcy case and in the Surv-Tek AP, ultimately filing the Third Amended Plan[16] with the hope of achieving confirmation.

DISCUSSION

A.  The Appropriate Standard for Evaluating Compensation Requests

Compensation is governed by § 330, which allows the Court to award a debtor's attorney employed under § 327,

(A) reasonable compensation for actual necessary services rendered by the . . . attorney and by any paraprofessional person employed by . . . such person; and

---

[13] *See* Order Valuing Collateral of Surv-Tek, Inc. under 11 U.S.C. § 506(a) for Confirmation Purposes (Doc. 372).
[14] *See* Claim 6-2 asserting a secured claim in the amount of $1,567,454.77.
[15] *See* Notice of 1111(B) Election (Doc. 379).
[16] *See* Exhibit E. Debtor did not file the Third Amended Plan until August 19, 2022, after the time period covered by the Fee Application.

6

(B) reimbursement for actual, necessary expenses.

§ 330(a)(1)(A) and (B).

Compensation may not be allowed for "unnecessary duplication of services" or "services that were not . . . reasonably likely to benefit the debtor's estate; or . . . necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). *See also In re Reynolds*, No. 2:18CV398 DAK, 2019 WL 4645385, at *3 (D. Utah Sept. 24, 2019) ("[Section] 330(a)(4) prohibits courts from allowing fees for unnecessary duplication of services, for services that were not reasonably likely to benefit the debtor's estate, or for services that were unnecessary to the administration of the case."), *aff'd*, 835 F. App'x 395 (10th Cir. 2021).

In the Tenth Circuit, the starting point for awarding reasonable compensation under § 330 to professionals retained on an hourly basis is the lodestar formula, determined by multiplying a reasonable number of hours expended by the attorney's reasonable hourly rate. *See In re Market Center E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013) ("In this circuit, the adjusted lodestar approach is used to calculate reasonable attorney's fees under 11 U.S.C. § 330(a)." (citing *In re Com. Fin. Servs.*, 427 F.3d 804, 811 (10th Cir. 2005))); *In re Miniscribe, Corp.*, 309 F.3d 1234, 1243 (10th Cir. 2002) ("[T]he lodestar test . . . is the appropriate method for calculation."); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (The lodestar figure is "the product of reasonable hours times a reasonable rate . . . ."), *supplemented*, 483 U.S. 711 (1987).[17]

---

[17] S*ee also In re Vill. Apothecary, Inc.*, 45 F.4th 940, 944 (6th Cir. 2022) (acknowledging that the Sixth Circuit requires bankruptcy courts to use the lodestar method to calculate reasonable compensation by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." (quoting *In re Boddy,* 950 F.2d 334, 337 (6th Cir. 1991))).

Under the adjusted lodestar approach adopted by the Tenth Circuit, the Court then considers each of the enumerated factors in § 330(a)(3) to determine the amount of reasonable compensation,

including—

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3).[18]

In addition to the factors codified in § 330(a)(3), the Tenth Circuit requires the Court to apply the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), commonly referred to as the *Johnson* factors. *Market Center*, 730 F.3d at 1249 (holding "that the bankruptcy court must consider the § 330(a)(3) **and** *Johnson* factors in evaluating whether a proposed fee amount is reasonable . . . .") (emphasis added).

The twelve *Johnson* factors are:

(1) The time and labor required.
(2) The novelty and difficulty of the questions.
(3) The skill requisite to perform the legal service properly.
(4) The preclusion of other employment by the attorney due to acceptance of the case.
(5) The customary fee.
(6) Whether the fee is fixed or contingent.
(7) Time limitations imposed by the client or the circumstances.
(8) The amount involved and the results obtained.

---

[18] Because the statute uses the word "including," the enumerated factors are not exhaustive. *See* § 102(3) ("'[I]ncludes' and 'including' are not limiting."). *See also Vill. Apothecary*, 45 F.4th at 947 (pointing out that the statute uses the word "including" and directs the court to consider "all relevant factors," and concluding that the § 330 factors are not "exhaustive").

8

(9) The experience, reputation, and ability of the attorneys.
(10) The "undesirability" of the case.
(11) The nature and length of the professional relationship with the client.
(12) Awards in similar cases.

*Market Center,* 730 F.3d at 1247 (quoting *Johnson*, 488 F.2d at 717-19). Many of the *Johnson*

factors are now codified in § 330(a)(3). *See Vill. Apothecary*, 45 F.4th at 945 ("In 1994,

Congress amended § 330, codifying many, but not all, of [the Johnson] factors."). To enhance or

reduce the lodestar amount, the Court may rely on the § 330(a)(3) factors and the *Johnson*

factors. *Market Ctr.*, 730 F.3d at 1249.

Although the Court must apply the factors in § 330(a)(3) and the *Johnson* factors when

evaluating reasonableness, the Court nevertheless has broad discretion to determine a reasonable

fee amount.[19] *See Market Ctr.*, 730 F.3d at 1250 ("A bankruptcy court has discretion in

determining how much weight to assign each factor and in determining the reasonableness of a

fee, but this discretion does not extend to disregarding factors prescribed by statute . . . . as well

as relevant *Johnson* factors."); *Com. Fin. Servs.*, 427 F.3d at 810 ("[B]ankruptcy courts have

wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it

its reasonable." (citing *Miniscribe*, 309 F.3d at 1244)). This is because the bankruptcy court is in

the best position to assess the work performed by the attorney appearing before it, taking into

account the circumstances of the particular case. *See In re ASARCO, L.L.C.,* 751 F.3d 291, 294

(5th Cir. 2014) ("[Th]e 'bankruptcy court is more familiar with the actual services performed and

has a far better means of knowing what is just and reasonable . . . .'" (quoting *In re Lawler*, 807

F.2d 1207, 1211 (5th Cir. 1987))), *aff'd sub nom. Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S.

---

[19] On the other hand, if the fees are not compensable under § 330(a)(4), the Court does not need to evaluate reasonableness under § 330(a)(3) or the *Johnson* factors. *See Reynolds*, 2019 WL 4645385, at *4 ("The §330/*Johnson* factors are only relevant to a court's analysis of whether fees are reasonable. These factors are not relevant when a court disallows fees pursuant to § 330(a)(4)(A).").

9

121 (2015). "Section 330(a), the lodestar method, and the *Johnson* factors work in conjunction with each other to guide the court's discretion." *ASARCO*, 751 F.3d at 295 (citing *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012)).

The party requesting compensation bears the burden of establishing that the requested fees are reasonable. *Market Ctr.*, 730 F.3d at 1246 ("The burden is on the party requesting fees to establish that its request is reasonable." (citing *Com. Fin. Servs.*, 427 F.2d at 811)).

B. The Arguments of the United States Trustee and the Subchapter V Trustee

The United States Trustee's main concern with the Fee Application is that the requested fees are not reflective of the results obtained. The Debtor's Third Amended Plan[20] proposes to pay Attorney estimated unpaid fees of $210,000 in full at the rate of $5,000 per month beginning on the plan's effective date, while unsecured creditors will receive only $45,000 over five years.[21]

At a preliminary hearing on the Fee Application, the United States Trustee and the Subchapter V Trustee conceded that Attorney expended a reasonable number of hours for the work performed and that Attorney's hourly rate was reasonable. The Court's Order Resulting from Preliminary Hearing Held November 22, 2022 ("Order Regarding Fee Application" - Doc. 506) confirmed that the reasonableness of Attorney's hourly rate and the reasonableness of the

---

[20] *See* Exhibit E.
[21] The United States Trustee is also concerned that payment of Attorney's fees if approved in the amount requested could result in Attorney receiving more than a *pro rata* share of available funds as compared to other administrative claimants in the event the bankruptcy estate is administratively insolvent. *See* UST's Objection, ¶¶ 14 and 17. The Subchapter V Trustee has yet to file an application for compensation. No other potential administrative expense claims were identified at the final hearing. The Third Amended Plan proposes to pay all administrative expense claims in full. *See* Third Amended Plan, ¶ 6.04 – Exhibit E. For those reasons, the Court will not address the United States Trustee's concern that payment of Attorney's fees in the amount requested might cause problems if the case is administratively insolvent.

time Attorney spent completing tasks were not an issue for the final hearing on the Fee Application.

The Subchapter V Trustee similarly argues[22] that, because the proposed plan proposes to pay most of the Debtor's disposable income over the next five years to Attorney, the Fee Application "is antithetical to the entire purpose of Sub V proceedings; is based on time and services that have provided little or no benefit to the estate; and unnecessarily increased the costs of these proceedings for all parties."[23] The United States Trustee and the Subchapter V Trustee urge that "results obtained" should be a "major factor"[24] for the Court to determine whether the requested fees are reasonable, and point out further that Debtor's counsel has a fiduciary duty to the estate to weigh the potential success of litigation against the costs to pursue it and to ensure that all creditors are treated fairly.[25]

In *In re Vill. Apothecary, Inc.*, 45 F.4th 940 (6th Cir. 2022), the Sixth Circuit recently examined whether courts should still consider the "results obtained" factor when examining reasonableness of fees under § 330(a)(3). In that case, the bankruptcy court reduced requested compensation by half where the funds recovered for the benefit of the estate totaled $38,000 but the requested fees totaled a little over $37,0000. *Id.* Even though the potential causes of action, if successful, could have benefitted the bankruptcy estate by over $1.6 million, the trustee settled with the debtor for only $38,000. *Id.* at 945. Given that the remaining assets in the bankruptcy

---

[22] The Subchapter V Trustee was excused from appearing at the final hearing on the Fee Application and did not appear. The United States Trustee adopted his objections.
[23] Subchapter V Trustee's Objection, ¶ 1.
[24] Subchapter V Trustee's Objection, ¶ 4 (quoting *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr. W.D. Ky. 1996)).
[25] Subchapter V Trustee's Objection, ¶ 5 (citing *In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995) and *Allied Computer*, 202 B.R. at 887). UST's Objection, ¶¶ 15 and 16.

11

estate totaled $40,000, the trustee's attorneys would receive over 90% of the bankruptcy estate assets if the requested fees were approved. *Id.* at 946.

The Sixth Circuit rejected the argument that "results obtained" under the *Johnson* factors conflicts with § 330(a)(3)(C)'s directive to consider whether the service was "beneficial at the time at which the service was rendered." *Id.* at 949. The Sixth Circuit found that "[t]here is no inconsistency in having courts look at both factors" because courts can still award compensation if the services ultimately did not benefit the estate yet reduce the fee if the "results obtained" warrant an adjustment. *Id.* The Sixth Circuit also rejected the argument that application of the "results obtained" factor improperly reverts back to the "spirit of economy" policy[26] that Congress rejected when it enacted the Bankruptcy Code. *Id.* at 949-50. Finally, the Sixth Circuit pointed out that cases which hold that "results obtained" is no longer a lodestar factor do so when considering whether services are compensable at all under § 330(a)(4), not whether, once the court determines that services are compensable, such services are reasonable under § 330(a)(3). *Id.* at 950. Ultimately, the Sixth Circuit affirmed the reduction of the requested fees by 50% where the court had applied the relevant factors, including "results obtained." *Id.* at 952-53.

This Court has reservations about reducing attorneys' fees based on the results obtained factor when the decision to perform the services was reasonable and appropriate when the services were rendered, taking into account the importance of the services to the estate, the

---

[26] Under the "spirit of economy policy" followed under the pre-Code Bankruptcy Act, "economy of the debtor's estate was a paramount concern." *Vill. Apothecary*, 45 F.4th at 949 (quoting *Boddy*, 950 F.2d at 337). The Sixth Circuit noted that the "results obtained" factor "is one of the factors courts consider in non-bankruptcy cases." *Vill. Apothecary*, 45 F.4th at 950. Thus, because the Code requires bankruptcy practitioners be compensated commensurate with non-bankruptcy practitioners, it remains appropriate to apply the "results obtained" factor in the bankruptcy context without inappropriately extending the "spirit of economy" factor.

expense, the debtor's or trustee's alternatives, and the prospect of success.[27] If the "results obtained" factor is used to reduce compensation in those circumstances, the effect would be to impose an involuntary contingency-fee arrangement on an attorney who has not agreed to take the case on a contingency basis and whose employment was not approved on that basis.[28] Likewise, using the "results obtained" factor to enhance compensation of an attorney retained on an hourly basis introduces a contingency fee type of bonus. *See Miniscribe*, 309 F.3d at 1246 (J. Hartz, concurring) ("A bonus for extraordinary results looks a lot like a contingency fee; in both circumstances the fee depends upon the result. To use a multiplier for 'extraordinary results' in effect grants a contingency enhancement for any recovery beyond 'expected' results.").

Despite the Court's reservations, the Court recognizes that it must follow Tenth Circuit precedent, which requires application of the *Johnson* factors, including the "results obtained" factor. *Mkt. Ctr.*, 730 F.3d at 1250 (holding that the court must consider the § 330(a)(3) factors and the relevant *Johnson* factors and is not free to ignore them). Even so, "results obtained" is only one of many factors for the Court to consider when determining the reasonableness of requested compensation. *See In re Miniscribe Corp.*, 309 F.3d at 1243 ("[The 'results obtained'] factor is better considered as merely one of the *Johnson* criteria for determining the multiplier, if any, to be applied to the lodestar amount, rather than the *sine qua non* of the reasonableness calculation."). Thus, even under Tenth Circuit precedent, "results obtained" is just one factor, and the Court has broad discretion to determine the weight to be given to that factor under the circumstances.

---

[27] *Cf. In re Cmty. Home Fin. Servs., Inc.,* 990 F.3d 422, 428 (5th Cir. 2021) (reversing district court's reduction of fees, finding that "[t]he district court was wrong to vacate the bankruptcy court award based on its own retrospective assessment of the propriety of the adversary proceedings . . . . ").

[28] The Court is mindful that "it is not bound by the parties' compensation agreement in calculating reasonable compensation under § 330." *Mkt. Ctr.*, 730 F.3d at 1251.

13

Under the facts and circumstances of this bankruptcy case and the Surv-Tek AP, the Court is convinced that the "results obtained" factor does not require a reduction in Attorney's requested fees. From what reasonably was or should have been known to Debtor and Attorney during the course of the litigation, Debtor had a reasonable prospect of prevailing in the litigation. If it had been successful, Debtor likely could have confirmed a plan under which it paid all of its priority and nonpriority unsecured creditors in full; Debtor's employees could keep their jobs; and Debtor's principals could preserve their investment in the company. Debtor's alternative to pursing the litigation was for Debtor, without knowing whether it would have prevailed in the ligation, to close its business, layoff its employees, and pay nothing to its priority and nonpriority unsecured creditors. The parties agreed that the Surv-Tek AP needed to be resolved before Debtor could move toward confirmation. Attorney worked tirelessly to try to get the best results possible for his client in a life or death situation for the company. Although Debtor did not ultimately prevail in the Surv-Tek AP, it did obtain a decision on the merits of its claim following a nine-day trial and the Court's issuance of a 127-page opinion. In the circumstances of this case, Attorney should not be penalized after the fact because his herculean efforts did not result in a payout to creditors. [29]

The circumstances of this case are different from giving significant weight to the "results obtained" factor where, for example, an attorney represents a chapter 7 trustee in attempting to recover assets for the bankruptcy estate, and the attorney charges a disproportionate amount of fees considering the prospect of success and the amount that realistically could be recovered in successful litigation.

---

[29] The Court has since denied confirmation of the Third Amended Plan. *See* Doc. 525. The Court is evaluating the Fee Application based on the time period for which the fees were incurred.

C.  Application of the lodestar calculation, § 330(a) factors, and *Johnson* Factors

*The Lodestar calculation*

Attorney spent a total of 993.5 hours in providing professional services to Debtor in connection with the bankruptcy case and the Surv-Tek AP, of which 914 hours were billed to Debtor, and 42.9 hours of paralegal time for professional services rendered on behalf of Debtor in connection with the bankruptcy case and the Surv-Tek AP.[30] Attorney's hourly rate is $300, and the paralegal's hourly rate is $115. The parties do not contest the reasonableness of the hourly rates charged, and the Court finds that such rates are reasonable. Application of the lodestar calculation results in total compensation of $279,133.50 in fees,[31] which is actually greater than the amount requested in Fee Application.[32] In computing attorney's fees, Attorney applied a slightly lower hourly rate for certain work allocated to the Debtor in Attorney's joint representation of Debtor and its principals in the Surv-Tek AP.[33]

*The § 330(a)(3) Factors:*

a)  The time spent on such services

No party objected that the time spent on such services was unreasonable. In its Order Regarding Fee Application (Doc. 506), the Court confirmed that the reasonableness of the time spent completing tasks was not at issue for the final hearing on the Fee Application. The Court

---

[30] 914 hours + 42.9 hours = 956 hours. The fewer number of hours is the result of the allocation of work in the Surv-Tek AP between Debtor and the non-debtor third-party principals required by the Order Conditionally Granting Moton for Joint Representation (Doc. 252).
[31] (914 x $300 = 274,200) + (42.9 x $115 = $4,933.50) = $279,133.50.
[32] *See* Exhibit A.
[33] In allocating fees to Debtor for work performed in the Surv-Tek AP, Attorney billed the maximum time rounded to the nearest tenth of an hour that was no more than 70% of the actual time spent, which resulted in a slightly lower hourly rate for certain time entries. *See* Fee Application, ¶ 10; *see also* Exhibit A.

15

nevertheless has reviewed Attorney's billing invoices attached to the Fee Application and concludes that the time spent on the tasks performed was reasonable.

b) The rates charged for such services

No party objected to Attorney's hourly rates. In the Order Regarding Fee Application, the Court confirmed that the reasonableness of Attorney's hourly rate was not at issue for the final hearing on the Fee Application. The Court independently concludes based on its experience that Attorney's hourly rates are reasonable given Attorney's experience, knowledge, expertise, and level of efficiency and prevailing rates charged in New Mexico.

c) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title

At the time the services were rendered, they were beneficial and necessary to the administration of the estate. Pursuing the Surv-Tek AP had the potential to significantly benefit the bankruptcy estate. There was no other viable alternative for the Debtor other than to prosecute the Surv-Tek AP if it wanted to attempt to reorganize and pay any dividend to unsecured creditors. Even though the Surv-Tek AP did not generate any funds for the estate, it fixed the amount of Surv-Tek's claims. Resolution of the adversary proceeding moved the bankruptcy case towards completion.

Similarly, Attorney's services throughout the bankruptcy case were both necessary to the administration of the case and beneficial at the time such services were rendered.

d) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed

This bankruptcy case and the Surv-Tek AP were complicated and important to Debtor's reorganization efforts. The Surv-Tek AP was initiated by Debtor's removal of a state court action

filed by Surv-Tek against Debtor. Debtor asserted six counter claims against Surv-Tek and many defenses to Surv-Tek's claims.

> e) With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field

Attorney passed the American Board of Certification Business and Consumer Bankruptcy exams,[34] but testified that he did not complete the certification process. Attorney is in good standing with the Supreme Court of the State of New Mexico and with the United States District Court for the District of New Mexico.[35] He has been a member of the bar of the State of New Mexico and of the United States District Court for the District of New Mexico since 2010, and has experience representing debtors in chapter 11 bankruptcy cases. This evidence supports the Court's conclusion that Attorney is a competent bankruptcy practitioner. Further, in appearing before the Court in this case, both at final, evidentiary hearings and trial, and in written submissions, the Court finds that Attorney has demonstrated that he has significant skills in the bankruptcy field.

> f) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

No evidence relating to this factor was presented to the Court at the final hearing on the Fee Application. Based on this Court's own experience with other bankruptcy practitioners representing debtors in this District, the Court finds that Attorney's compensation is well within the range of customary compensation charged by comparably skilled bankruptcy practitioners. The Court recognizes that this factor does not ask the Court to consider comparable fees charged by other bankruptcy practitioners; nevertheless, the Court is guided by its own experience in reviewing fee applications in other cases before the Court. *See In re Morreale*, 626 B.R. 571, 619

---

[34] *See* Exhibit O.
[35] *See* Exhibits L and M.

(Bankr. D. Colo. 2020) ("[T]he court employs its own experience, both as an attorney and as a judge, to attorney fee applications." (quoting *In re Hammeken*, No. 0:02-bk-00536-EWH, 2010 WL 2940801, at *1 (Bankr. D. Ariz. July 21, 2010))).[36] In addition, defendants in the Surv-Tek AP included a request for attorneys' fees totaling more than $310,000 for post-petition fees.[37] This figure exceeds the amount requested in the Fee Application for performing work as Debtor's counsel in the bankruptcy case and in the Surv-Tek AP.

*The Johnson Factors:*

(1) The time and labor required.

This factor overlaps § 330(a)(3)(A) and was not contested at the hearing on the Fee Application.

(2) The novelty and difficulty of the questions.

Debtor filed this bankruptcy case, electing treatment under subchapter V, a relatively new subsection of chapter 11 at the time. Attorney raised many creative arguments over the course of the bankruptcy case in his effort to assist Debtor in its reorganization efforts.

(3) The skill requisite to perform the legal service properly.

Attorney is an experienced and competent bankruptcy attorney. He has the requisite skill to properly perform the legal services on behalf of Debtor.

(4) The preclusion of other employment by the attorney due to acceptance of the case.

This bankruptcy case and the Surv-Tek AP took an inordinate amount of Attorney's time, to the preclusion of his ability to accept other work. In Attorney's own words, he worked "really, really hard on Debtor's bankruptcy case."[38] The Court agrees that Attorney had to work very

---

[36] *see also In re Weaver*, No. 13-10-12204 JA, 2011 WL 867136, at *4 (Bankr. D.N.M. Mar. 11, 2011) (In evaluating the reasonableness of debtor's counsel in a chapter 13 case, "[t]he Court may draw on its own experience with attorney charges in bankruptcy cases in this district to determine a reasonable fee.").
[37] *See* Surv-Tek AP – Doc. 139.
[38] Fee Application, ¶ 17.

18

hard to give Debtor his best representation, and that the amount of time he expended necessarily precluded him from taking on significant other work. In addition, Attorney, who has a very small firm, took significant financial risk in representing Debtor.

(5) The customary fee.

The reasonableness of Attorney's hourly rates was not contested. In the Court's own experience the amount of the fees sought in this highly contested chapter 11 case are not unusually high.

(6) Whether the fee is fixed or contingent.

This factor is not relevant to the Fee Application, which seeks compensation at reasonable hourly rates.

(7) Time limitations imposed by the client or the circumstances.

Debtor filed this bankruptcy case to stay enforcement of the state court's order which would have required Debtor to cease its business operations, imposing some urgency on the bankruptcy filing. There were no other significant time limitations.

(8) The amount involved and the results obtained.

The Court has already considered this factor at length above. Although Attorney did not "win" the Surv-Tek AP, resolution of the Surv-Tek AP was necessary to the administration of Debtor's bankruptcy case and formulation of a chapter 11 plan of reorganization.

(9) The experience, reputation, and ability of the attorneys.

In the Court's experience with Attorney in other matters before the Court, the Court has found Attorney to be very able and capable, with significant bankruptcy experience. In the Court's view, Attorney has a good reputation for being a competent bankruptcy practitioner.

(10) The "undesirability" of the case.

This bankruptcy case was not particularly desirable. When Debtor filed its bankruptcy petition, it was involved in heavily contested state court litigation that would have shut Debtor's business down. Debtor was having difficulty generating significant profits from the operation of its business. Debtor was unable to pay Attorney's fees on a monthly basis in nearly the amount permitted by court order. Had Attorney not represented Debtor, Debtor's prospect at achieving a successful reorganization would have been greatly diminished.

(11) The nature and length of the professional relationship with the client.

Attorney has represented Debtor since just prior to the bankruptcy filing. Applying this factor to the case in evaluating the requested compensation is neutral.

(12) Awards in similar cases.

This bankruptcy case and related adversary proceedings proved to be complex, challenging, and heavily contested. Compared to similar cases before the Court, the Court finds that the requested fees are low.

CONCLUSION

Having applied the § 330(a)(3) and relevant *Johnson* factors, the Court concludes that Attorney's requested compensation in the Fee Application should be approved. Even though the Surv-Tek AP did not result in a recovery for the bankruptcy estate or significantly reduce the amount of Surv-Tek's claim, and unsecured creditors will receive little in comparison to the amount Attorney stands to receive if the Fee Application is approved, the results obtained do not require the Court to reduce Attorney's allowed compensation. Given Debtor's alternatives at the outset and Debtor's prospect of success measured by information reasonably knowable at the time, pursuing the Surv-Tek AP to work toward formulation of a feasible plan that would pay

20

priority and unsecured creditors was Debtor's best option. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 6, 2023

COPY TO:

Nephi Hardman
Attorney for Debtor
Nephi D. Hardman Attorney at Law, LLC
9400 Holly Ave NE Bldg 4
Albuquerque, NM 87122

Jordan Michael Sickman
Attorney for United States Trustee
DOJ-Ust
301 North Main, Suite 1150
Wichita, KS 67202

Patrick Malloy, III
Subchapter V Trustee
Patrick J. Malloy, III, Trustee
401 S. Boston Ave, Ste 500
Tulsa, OK 74103

Christopher M Gatton
Attorney for Surv-Tek, Inc.
Giddens & Gatton Law, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111